CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

September 25, 2024

LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| JAMES CALVIN ROBERTSON ) | Civil Action No. 7:22-cv-00086 |
|     Plaintiff, ) | |
| ) | MEMORANDUM OPINION |
| v. ) | |
| ) | By:    Joel C. Hoppe |
| R.N. D. DAMERON et al., ) | United States Magistrate Judge |
|     Defendants. ) | |

James Calvin Robertson, a Virginia inmate appearing pro se, has filed this action under 42 U.S.C. § 1983, alleging that two medical providers at Augusta Correctional Center violated his Eighth Amendment right against cruel and unusual punishment by refusing to renew his ibuprofen prescription and to schedule a follow-up appointment for his jaw pain. Compl. 2, ECF No. 1.[1] Defendants Derinda Dameron Lokey, R.N. ("Nurse Dameron"), and Kyle Smith, M.D. ("Dr. Smith"), waived their right to answer under 42 U.S.C. § 1997e(g)(1). ECF No. 31. The matter is now before the Court on Defendants' motion for judgment on the pleadings. ECF No. 36; Fed. R. Civ. P. 12(c). Defendants' motion has been fully briefed, ECF Nos. 37, 42, 43, and can be resolved without a hearing, Fed. R. Civ. P. 78(b). For the reasons explained below, I find that Robertson's complaint fails to state a plausible claim against either Defendant for deliberate indifference to a serious medical need and that Defendants are therefore entitled to judgment as a matter of law. Accordingly, Defendants' motion for judgment on the pleadings, ECF No. 36, will be granted and this action will be dismissed with prejudice.

I. The Legal Framework

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Such motions are 'designed to dispose of

---

[1] The case is before me by the parties' consent under 28 U.S.C. § 636(c). ECF Nos. 17, 19.

cases when material facts are not in dispute and the court can judge the case on its merits,'" *Crossroads Equity Partners v. Dogmatic Prods., Inc.*, 317 F.R.D. 529, 531–32 (W.D. Va. 2016) (quoting *Preston v. Leake*, 629 F. Supp. 2d 517, 521 (E.D.N.C. 2009)), considering only the parties' pleadings and other materials traditionally "[o]pen to the district court's consideration" under Rule 12(b)(6), *Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014). "To prevail on a Rule 12(c) motion, the moving party must show that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Tapp v. Wash. Metro. Area Transit Auth.*, 306 F. Supp. 3d 383, 391 (D.D.C. 2016) (cleaned up). "A fact is material if it might affect the outcome of the suit under the governing law." *Roark v. Universal Fibers, Inc. v. Assocs. Sav. Plan*, No. 1:16cv40, 2017 WL 1277528, at *3 (W.D. Va. Jan. 6, 2017) (motion for judgment on the pleadings) (quoting *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (motion for summary judgment)).

When a defendant moves for judgment on the plaintiff's claim under Rule 12(c), the court applies "the same standard as for a Rule 12(b)(6) motion" to dismiss the plaintiff's complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The court should grant a defendant's Rule 12(c) motion if, "accepting as true all well-pleaded allegations . . . and drawing all reasonable factual inferences in the plaintiff's favor," *Belmora, LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016), the plaintiff's complaint does not "state[] a plausible claim for relief" against the moving defendant, *Massey*, 759 F.3d at 353 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). See *Syngenta Crop Prot., Inc. v. U.S. Evt'l Prot. Agency*, 444 F. Supp. 2d 435, 444 (M.D.N.C. 2006). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged" under the governing law. *Iqbal*, 556 U.S. at 678; *see Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002).

To state a claim under § 1983, a plaintiff must plausibly "allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was [personally] committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *accord Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). The facts needed to establish the "violation of a right" secured by federal law will depend on the specific right or constitutional provision at issue in the complaint. *Iqbal*, 556 U.S. at 677; *see Langford v. Joyner*, 62 F.4th 122, 126–27 (4th Cir. 2023).

Liberally construed, Robertson's pro se complaint contains a single count alleging that, since October 2021, each named defendant provided inadequate medical care for Robertson's alleged pain and migraines resulting from an improperly set jaw. *See* Compl. 2. "A prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Hixon v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021) (quotation marks omitted). A deliberate indifference claim grounded on "inadequate medical care" has an objective element and a subjective element. *See id.* The prisoner's complaint must allege facts supporting a reasonable inference "that his medical condition was objectively serious—that is, one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (cleaned up). On the subjective element, his complaint "need[s] to plead sufficient facts to plausibly allege that *each Defendant* actually knew about his serious medical condition *and* the [excessive] risks of failing to treat him." *Langford*, 62 F.4th at 125 (emphasis

3

added). "Prison officials evince deliberate indifference to a serious medical need by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to adequate medical care." *Hicks v. James*, 255 F. App'x 744, 749 (4th Cir. 2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see, e.g.*, *Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009). Conversely, allegations that a prison official acted negligently, or that the inmate and his medical provider disagreed over the proper course of treatment for the inmate's condition are not actionable. *See Campbell v. Johnson*, 465 F. Supp. 2d 597, 603–04 (E.D. Va. 2006) (citing *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)).

## II. Background & Procedural History

Robertson filed his action in February 2022. ECF No. 1. On its face, his pro se § 1983 complaint appears to assert two distinct claims—one against a Dr. Ibanez at Augusta Medical Center and one against Nurse Dameron and Dr. Smith at Augusta Correctional Center. *See* Compl. 2 (¶ E). This portion of his complaint reads in its entirety:

> In September 2019 I had my jaw broken during an assault. I was sent out to Augusta Medical to have my jaw set and wired. Dr. Ibanez set the jaw, but it was set improperly.
>
> The misalignment of the setting has since caused me pain in the jaw and migraines. I was being treated with Ibuprofen, but since October 2021 [Nurse] Dameron & Dr. Smith have refused to renew my prescription or even schedule me for a follow-up appointment.

*Id.* Robertson seeks unspecified "treatment for pain and compensation for the failure to properly set the jawbone." *Id.* (¶ F). His complaint does not allege that Nurse Dameron or Dr. Smith had any involvement in Dr. Ibanez's attempt to reset his broken jaw after the September 2019 injury. Compl. 1–2. Robertson's allegations also make clear that he blames Dr. Ibanez alone for the jaw "misalignment" that causes his ongoing "pain in the jaw and migraines," whereas he blames Nurse Dameron and Dr. Smith for their "refusal" to properly manage these symptoms "since

October 2021." *Id.* at 2. Dr. Ibanez is not named as a defendant in Robertson's complaint, *id.* at 1, and Robertson has never asked the Clerk to issue a summons directed to this person. *See* Order of July 8, 2022, ECF No. 16; Mem. Op. & Order of Mar. 31, 2023, ECF No. 27.

Accordingly, I construe Robertson's complaint, ECF No. 1, as asserting one Eighth Amendment denial-of-treatment claim against Nurse Dameron and Dr. Smith based on the allegations that Robertson's post-procedure "pain in the jaw and migraines" were "being treated with Ibuprofen, but since October 2021 [Nurse] Dameron and Dr. Smith have refused to renew [his] prescription" for ibuprofen or to "schedule [him] for a follow-up appointment." Compl. 2; *see Hicks*, 255 F. App'x at 749 (citing *Estelle*, 429 U.S. at 106). Robertson's complaint seeks prospective injunctive relief ("treatment for pain") and compensatory damages against each Defendant under 42 U.S.C. § 1983. Compl. 2; *accord* Defs.' Br. in Supp. 3–4, ECF No. 37.

Nurse Dameron and Dr. Smith moved for judgment on the pleadings. ECF No. 36. They argue that they are entitled to judgment as a matter of law because Robertson's complaint "specifically claims that his pain is due to his misaligned jaw, which was performed by the non-party physician," rather than to anything that Nurse Dameron or Dr. Smith did (or did not do) to treat Robertson' jaw pain and migraines after this medical procedure. *See* Defs.' Br. in Supp. 7–8. They also argue that Robertson's complaint does not demonstrate he suffered "any substantial harm as a result of [their] alleged 'refusal' to renew his ibuprofen or to schedule him for a follow up appointment," *id.* at 8, and, even if it did, the facts alleged describe "a disagreement between [Robertson] and the healthcare providers regarding the course of [his] treatment," *id.* at 9. Such disagreements "simply [are] not deliberate indifference and [are] not subject to judicial review." *Id.* at 9 (emphasis omitted). Finally, they assert that Robertson's request for future pain "treatment" is moot because Robertson is no longer housed at ACC. *See id.* at 9–11; *see also*

5

ECF No. 24 (Robertson's letter received by the Court on October 19, 2022, stating that he was transferred from Augusta Correctional Center to Deerfield Correctional Center).

Robertson filed a short response opposing Defendants' motion. Pl.'s Resp. 1, ECF No. 41. While this response reasserts Robertson's primary grievance with Dr. Ibanez's failure to "properly" set his jaw in September 2019, it also adds factual allegations that could be material to his existing Eighth Amendment denial-of-treatment claim against Nurse Dameron and Dr. Smith. *See id.*; Defs.' Reply 2–3, ECF No. 43. For example, he alleges that Nurse Dameron knew Robertson had "surgery" when he broke his jaw bone in September 2019 because "the day [he] was sent out to have [his] mouth wire[d] shut, Nurse Dameron told the [prison guard] who was taking [him] to see Dr. Ibranze [sic] to take wire cutters in case [Robertson] had to puke." Pl.'s Resp. 1 (emphasis omitted); *accord* Defs.' Reply 3. Nurse Dameron personally gave him "a shot for nausea" when he got back to ACC. *See* Pl.'s Resp. 1. "After [he] had the surgery [Robertson] told [Dr.] Smith and Nurse Dameron that [his] teeth w[]ere overlapped and about the pain for migraines." *Id.* Similar to his complaint, Robertson conclusorily alleges that Dr. Smith and Nurse Dameron "refused to give [him] ibuprofen for pain" and that he "never had a follow up appointment" with an outside provider "when [he] was release[d] from medical at Augusta Correctional Center." *See id.* ("The Medical Department are in charge of sending inmates out for medical treatment not us inmates." (emphasis omitted)). Defendants urge me to exclude these allegations because "it is axiomatic" that Robertson cannot properly amend his complaint by adding facts or claims in his opposition brief. Defs.' Reply 2 (citing *Knott v. Sokol*, No. 7:21cv526, 2023 WL 2546948, at *1 n.6 (W.D. Va. Mar. 17, 2023)) (other quotation marks omitted). I agree. *See* Fed. R. Civ. P. 15(a)(2); *Knott*, 2023 WL 2546948, at *1 n.6 ("To hold otherwise would mean that a party could unilaterally amend a complaint at will, even without

6

filing a[ proposed] amendment, and simply by raising a point in a brief." (quotation marks omitted)). Accordingly, I have not considered Robertson's unsworn factual allegations in his brief.

Robertson's response also cites two VCU medical records, dated November 3, 2022 and December 1, 2022, which purportedly show that his "jaw bone needed to be removed due to [the] possibility of hardware failure caus[]ing pain." Pl.'s Resp. 1 (citing ECF No. 33, at 52–53). In May 2023, Robertson filed 55 pages of "Additional Evidence" consisting of medical records, sick call slips, and grievances. ECF No. 33. This filing includes a VCU treatment note dated November 3, 2022, which shows that Robertson was diagnosed with left-sided facial "pain without clear cause" and that the examining physician recommended that Robertson have surgery to remove the left mandibular hardware "due to [the] possibility of hardware failure causing [his] pain." ECF No. 33, at 52–53. The May 2023 filing does not include a VCU medical record dated December 1, 2022, but Robertson did mention this office visit in a previous letter docketed as "Additional Evidence-Regarding Medical Treatment at VCU," ECF No. 25 (Dec. 19, 2022). None of these additional documents are exhibits to a party's pleading, ECF Nos. 1, 31; Fed. R. Civ. P. 10(c), to Defendants' subsequent motion for judgment on the pleadings, ECF Nos. 36, 37, or to Plaintiff's responses to those motions. *See Massey*, 759 F.3d at 347–48. Indeed, the medical records reflect appointments that occurred after Robertson was transferred from August Correctional Center on October 13, 2022. Accordingly, the records are not relevant to Robertson's claims, and I have not considered them in resolving Defendants' Rule 12(c) motion. *See* Fed. R. Civ. P. 12(d); *Smith*, 589 F.3d at 740.

III. Discussion

Robertson's complaint must allege facts, accepted as true and viewed in his favor, that support a reasonable inference that (1) Robertson had an objectively "serious medical condition"; and (2) "each Defendant actually knew about his serious medical condition and the [excessive] risks of failing to treat him." *Langford*, 62 F.4th at 125. On the first prong, Robertson alleges that he needs more "prescription" ibuprofen and a follow-up appointment to treat unspecified "pain in the jaw and migraines." Compl. 2. The injury to his jaw and surgery occurred more than two years before the alleged lack of treatment by the Defendants. These allegations do not establish an objectively serious medical need. *See, e.g.*, *Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) (unpublished) ("A medical condition is shown as objectively serious when it 'would result in further significant injury or unnecessary and wanton infliction of pain if not treated.'"); *Cowles v. House*, No. 1:06cv920, 2006 WL 5781567, at *2 (E.D. Va. Oct. 10, 2006) (plaintiff's allegation that "he needs medication to treat unspecified knee pain" did not demonstrate a sufficiently "serious" medical need). Even if they did, Robertson does not allege that Nurse Dameron or Dr. Smith "actually knew about" *both* his jaw pain with migraines *and* the excessive "risk in failing to treat him" with more ibuprofen. *Langford*, 62 F.4th at 125. Robertson does not allege that he ever complained to either provider about his jaw pain or migraines, *see Hicks*, 255 F. App'x at 749; or that in October 2021—more than two years after his injury and surgery—any physician recommended that Robertson receive pain medications or a follow-up appointment, *see Smith*, 589 F.3d at 739. He simply asserts that "since October 2021 [Nurse] Dameron and Dr. Smith have refused to renew [his] prescription or even schedule [him] for a follow-up appointment." Compl. 2. These conclusory allegations do not state a plausible Eighth Amendment denial-of-treatment claim against Nurse Dameron or against Dr. Smith. *Langford*, 62 F.4th at 125–27.

IV. Conclusion

For the foregoing reasons, the Court finds that there are no disputed material facts bearing on Robertson's sole Eighth Amendment claim against Nurse Dameron and Dr. Smith, and that each Defendant is entitled to judgment as a matter of law that she or he is not liable to Robertson for the misconduct alleged in his § 1983 complaint. Accordingly, Defendants' motion for judgment on the pleadings, ECF No. 36, is **GRANTED** and judgment will be entered in each Defendant's favor. An appropriate order will be entered.

ENTER: September 24, 2024

Joel C. Hoppe
U.S. Magistrate Judge